UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROBERT ALLEN COOPER, | ) |
| | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 3:22-CV-0204-TAV-SKL |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| *Defendant*. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Robert Allen Cooper ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him supplemental security income ("SSI"). Each party has moved for judgment [Doc. 19 & Doc. 24] and filed supporting briefs [Doc. 20 & Doc. 25]. For the reasons stated below, I recommend: (1) Plaintiff's motion for summary judgment [Doc. 19] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 24] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 12, Doc. 12-1, & Doc. 18 ("Tr.")], Plaintiff filed his application for SSI on January 15, 2016, alleging disability beginning January 15, 2016. Plaintiff's claim was denied initially and on reconsideration at the agency level. Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"), Jim Beeby. ALJ Beeby conducted the hearing on December 11, 2017. In a decision dated June 5, 2018, ALJ Beeby denied

Plaintiff's claim, finding Plaintiff has not been under a disability as defined in the Social Security Act at any time since he filed his application for SSI on January 15, 2016.[1]

Plaintiff sought administrative review of the June 2018 denial. On April 11, 2019, the Appeals Council entered an order reversing the ALJ Beeby's decision and remanding Plaintiff's claim for further proceedings. The Appeals Council found "further consideration of the claimant's [mental] residual functional capacity is required." (Tr. 137). The Appeals Council further found ALJ Beeby wrongfully considered Plaintiff's work history as well as a December 2005 report from the Cooperative Disability Unit ("CDI"), noting such evidence is "not relevant to consideration of the claimant's symptoms with respect to his current claim for supplemental security income." (Tr. 137).

ALJ Beeby conducted a second hearing on October 4, 2019 (Tr. 19). In a decision dated October 23, 2019, ALJ Beeby again found Plaintiff has not been under a disability at any time since his application date, January 15, 2016 (Tr. 159). On administrative appeal, the Appeals Council found ALJ Beeby failed to comply with the April 2019 remand order, concluding ALJ Beeby again wrongfully considered the CDI report and Plaintiff's work history when evaluating Plaintiff's symptoms (Tr. 167-68). The Appeals Council remanded the case a second time, this time to a different ALJ, Todd Spangler. ALJ Spangler[2] was instructed to "[f]urther evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929)," and to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with

---

[1] SSI applicants are only entitled to benefits beginning "the month following the month" their application is filed, regardless of the date of alleged onset of disability. 20 C.F.R. § 416.335.

[2] Unless noted otherwise, all remaining references to the ALJ are to ALJ Spangler.

2

specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Rulings 85-16 and 96-8p)." (Tr. 166-68).

The ALJ conducted a hearing on Plaintiff's claim on October 12, 2021[3] (Tr. 1160). Plaintiff testified at that hearing, but testimony from the Vocational Expert ("VE") was delayed until November 30, 2021 (Tr. 7). Plaintiff was represented by counsel at the hearings on October 12 and November 30, the same attorney who represents him in the instant federal court case. On January 6, 2022, the ALJ found Plaintiff has not been under a disability at any time since his application date, January 15, 2016 (Tr. 191). This time, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 199-200). Plaintiff timely filed the instant action.

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born January 29, 1975, making him 40 years old on the date his SSI application was filed, which is considered a "younger person." 20 C.F.R. § 416.963. He has only a limited education, and he has no past relevant work.

### B.    Medical Records

According to the July 2016 Disability Determination Explanation (Tr. 78), the basis for Plaintiff's claim of disability is: "Can't read or write; depression; nervous in crowds" and "seizures." While there is no need to summarize all the medical records herein, the relevant records have been reviewed.

---

[3] The transcript of the hearing held October 12, 2021, is filed in the record at docket no. 18. The remainder of the administrative record is filed at docket nos. 12 and 12-1 as stated above.

3

## C. Hearing Testimony

As mentioned, Plaintiff was represented by his current counsel at the hearing held October 12, 2021 (Tr. 1160-95, and the hearing held November 30, 2021 (Tr. 7-16). The transcripts of these hearings have been reviewed, as have the transcripts of the hearings before ALJ Beeby held in December 2017 (Tr. 55-77) and October 2019 (Tr. 19-53).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

4

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

## B. The ALJ's Findings

In his decision dated January 6, 2022, the ALJ first found Plaintiff had not engaged in substantial gainful activity since the date he filed his application for SSI, January 15, 2016. At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease, (2) minor motor seizures, (3) anxiety disorder, (4) mood disorder, (5) and intellectual deficits (Tr. 175). The ALJ also noted Plaintiff sustained a knee injury in 2020 that required surgery to repair. The ALJ found this was not a severe impairment because there "is no evidence that the injury or residual effects from it persisted for the requisite twelve-month period" (Tr. 175-76). The ALJ also noted Plaintiff "cited right knee pain and hand pain," but found these conditions were not medically determinable impairments due to the lack of diagnostic testing or clinical evidence (Tr. 176).

5

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following qualifications/additional restrictions:

- He can sit for eight hours total, and two hours at a time, in an eight-hour workday.

- He can stand for six hours total, and one hour at a time, in an eight-hour workday.

- He can walk for up to five hours total, and not more than 30 minutes at a time.

- He can only occasionally climb ramps and stairs.

- He can only occasionally balance, stoop, kneel, crouch, and crawl.

- He cannot climb ladders, ropes, or scaffolds.

- He cannot tolerate exposure to unprotected heights.

- He is limited to simple and low level detailed tasks.

- He cannot have more than occasional contact with coworkers, supervisors, or the general public.

- He cannot have more than occasional changes in the work setting, and any changes should be introduced gradually.

(Tr. 177).

At step four, the ALJ found Plaintiff does not have any past relevant work. At step five, however, the ALJ found there were other occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including marker, packager, and grader/sorter (Tr. 190).

6

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the application date of January 15, 2016, and the date of the ALJ's decision (Tr. 191).

## IV.    ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for an award of benefits, or in the alternative for further administrative proceedings.[4]  Plaintiff raises the following issues in his brief: (1) "The ALJ failed to evaluate the opinion of Dr. [sic] Cooper's treating medical source in accordance with 20 C.F.R. § 416.927(c)(2)"; (2) "The ALJ disregarded the testimony of the Claimant"; (3) "The ALJ arbitrarily ignored or rejected lay witness testimony"; (4) "The ALJ failed to give proper weight to the opinions of examining and treating sources"; (5) "The ALJ improperly relied on his own lay medical opinion"; and (6) "The ALJ did not follow the Appeals Council Remand Order." [Doc. 20 at Page ID # 1275; 1278; 1279; 1281; 1282].

### A.    The ALJ's Consideration of Dr. Michel's Opinion

Plaintiff first argues the ALJ failed to properly consider and address the opinion of James Michel, M.D., one of Plaintiff's treating providers from the Free Medical Clinic of Oak Ridge. Dr. Michel offered his opinion on a form titled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" (Tr. 1079-85).  The opinion is dated February 22, 2021 (Tr. 1085).

---

[4] As a preliminary matter, Plaintiff's brief is 32 pages long, which violates the 25-page limit set by Eastern District of Tennessee Local Rule 7.1.  Despite requesting, and receiving, a lengthy extension to the deadline for filing the brief, Plaintiff at no point sought permission to exceed the page limit.  Plaintiff does not address the issue in his brief, and neither does the Commissioner. Given how long this matter has been pending, however, the arguments made in the pages exceeding the page limit have been considered and are addressed herein.  In the future, such filings will be subject to summary dismissal.

7

Because Plaintiff's SSI application was filed in January 2016, the so-called "treating physician rule" applies. Pursuant to the treating physician rule, in considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[5] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 416.927. While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)); *see also Gayheart*, 710 F.3d at 376 (noting that "two conditions" must be met for treating physician to automatically receive controlling weight (citing 20 C.F.R. § 404.1527(c)(2))).

When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr*, 616 F. App'x at 211 (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citation omitted). If a treating-source opinion

---

[5] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c (for claims filed on or after March 27, 2017: "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.").

is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature and length of the treatment relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ is not, however, required to engage in a protracted discussion of the reasons. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement. (citations omitted)).

Regarding Dr. Michel's opinion, the ALJ found:

> Dr. James Michel provided a medical source statement in which he opined that the claimant is limited to carrying and lifting up to ten pounds occasionally and frequently (due to degenerative disc disease), sitting for up to seven hours total in a workday (for an hour at a time), standing for up to an hour total (for 30 minutes at a time), and walking for an hour total (for 15 minutes at a time). He estimated that the claimant could occasionally reach, push and pull bilaterally and frequently handle bilaterally and could occasionally use with feet for the operation of foot controls. He estimated that the claimant could never climb ladders or stairs, kneel, or crawl and [could] only occasionally balance, stoop, or crouch. Finally, Dr. Mi[chel] opined that the claimant could never tolerate exposure to heights, moving mechanical parts, and temperature extremes and could only occasionally operate a motor vehicle[] or tolerate exposure to humidity, pulmonary irritants or vibration and was limited to environments with moderate noise levels. (See Exhibit B27F). This opinion is given little weight. There is nothing in the medical evidence (beyond the claimant's subjective assertions) that supports any limitation to his use of his hands. On the contrary, examinations of his hands have consistently been entirely normal, nor do Dr. Michel's records reflect any evidence of an underlying problem[] with the claimant's hands. Further, there is no support for the notion that he can only occasionally use his lower extremities for the operation of foot controls or that he is as limited in terms of standing and walking as Dr. Michel suggests. The claimant's gait and station have been

9

consistently normal (other than in the wake of his knee injury, which has been treated and he is healing from, as discussed). Consequently, Dr. Michel's opinion is given little weight.

(Tr. 188-89).

Plaintiff argues that by "rejecting Dr. Michel's opinion, the ALJ essentially disregarded the majority of Mr. Cooper's medical records and testimony concerning his physical health." [Doc. 20 at Page ID # 1276-77]. In particular, Plaintiff complains the ALJ failed to reference an April 17, 2017, letter from Dr. Michel to Plaintiff's counsel, and a 2020 MRI of Plaintiff's lumbar spine, which Plaintiff contends "showed worsening conditions" as compared to a 2017 MRI [*Id.* at Page ID # 1277 (discussing Tr. 235 (letter), Tr. 825-26 (2017 MRI), Tr. 1053-54 (2020 MRI))].

The 2017 letter states:

> Mr. Cooper has severe intractable low-back pain that has been unresponsive to medical therapy. His L/S MRI shows severe degenerative changes with disc bulging and extrusion resulting in central canal stenosis and moderate to severe bilateral neural foraminal narrowing. I have conferred with an Oak Ridge Orthopedic Surgeon who states that the patient definitely needs back surgery, but cannot get it without health insurance.
>
> In his present health condition, Mr. Cooper is 100% disabled, and in my opinion, he should qualify for disability insurance.

(Tr. 235).

First, the ALJ specifically discussed the content of the letter (Tr. 183), noting the results of the February 2017 MRI and Dr. Michel's recounting of the statement from the orthopedic surgeon. The ALJ also discussed how Plaintiff was seen in April 2017 by Dr. Michel, and the ALJ noted there are no records from the orthopedic surgeon referenced in Dr. Michel's letter. Records of visits with Dr. Michel in May and June 2017 indicate Plaintiff's medications "partially helped" his

10

back pain, and that Plaintiff had "no stomach problems" from his medications (Tr. 814, 830). The ALJ then noted that after a September 2017 visit, Plaintiff did not return to the Free Medical Clinic of Oak Ridge until June 2018. When he returned, he reported he had run out of medication about a month prior and then began experiencing seizures, paranoia, and depression (Tr. 183, 832). Dr. Michel "restart[ed]" Plaintiff's "other old meds," and added a medication for depression (Tr. 832).

True, the ALJ did not specifically address Dr. Michel's statement that Plaintiff "is 100% disabled," but as the Commissioner argues, this is not a medical opinion but rather an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d). As such, the ALJ's failure to assign it any particular weight is, at most, harmless error. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (holding that opinion addressing "one of the issues reserved to the Commissioner . . . is not a medical opinion requiring consideration.").

The ALJ also did not explicitly address the 2020 MRI. Nevertheless, it is well-established that the ALJ is "not required to explain every piece of evidence in the record." *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018). Further, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). The ALJ discussed Dr. Michel's opinion in detail, and it is clear the ALJ considered the opinion in its entirety, which would include the note regarding the MRIs. The ALJ specifically found at step two that Plaintiff has severe degenerative disc disease, "with a bulging disc and stenosis in his lower lumbar spine." (Tr. 176). In explaining his assessment of Plaintiff's RFC, the ALJ noted "[m]edical treatment records from late 2019 continue to reflect complaints of severe low back pain," citing the group of records from the Free Medical Clinic of Oak Ridge that includes the 2020 MRI (Tr. 184). Finally, Plaintiff does not address how the alleged "worsening" supposedly reflected in differences between the 2017 MRI and the 2020 MRI affected his ability

11

to perform work-related activities. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").

Regarding the February 2021 opinion more generally, the ALJ addressed other evidence in the record he found inconsistent with Dr. Michel's extremely limiting RFC assessment, including: (1) that Plaintiff's gait and station "have been consistently normal (other than in the wake of his knee injury, which has been treated and he is healing from, as discussed)" (Tr. 189), which the ALJ found inconsistent with Dr. Michel's assessed limitations with Plaintiff's ability to operate foot controls, walk, and stand; and (2) that "examinations of his hands have consistently been entirely normal" (Tr. 189), which the ALJ found inconsistent with Dr. Michel's assessed limitations in Plaintiff's ability to reach, push, and pull. The ALJ specifically noted Dr. Michel's records do not reflect "any evidence of an underlying problem[] with the claimant's hands," and that there "is nothing in the medical evidence (beyond the claimant's subjective assertions) that supports any limitation to his use of his hands." (Tr. 189).

The ALJ also discussed in detail a 2020 physical consultative exam, which revealed "some restriction to his lumbar range of motion," but a negative straight leg test, no atrophy or loss of muscle tone, and a normal examination of the right knee, hips, feet, ankle(s), shoulders, elbows, hands, and wrists (Tr. 187, 953-54). The ALJ found that Plaintiff's "intact ranges of motion (other than occasional impediment to lumbar ranges), gait (other than in the wake of his knee injury), and mobility support the notion that he is able to engage in light exertion with some limitation due to lower extremity discomfort due to lumbar disc disease." (Tr. 188).

12

Thus, the ALJ addressed the consistency and supportability factors in assessing Dr. Michel's opinion. In addition, the ALJ plainly considered the longitudinal nature of Plaintiff's treatment relationship with Dr. Michel, as the ALJ discussed records from the Free Medical Clinic of Oak Ridge dating back to September 2016, and the ALJ specifically referred to "Dr. Michel's records" when explaining the basis for discounting Dr. Michel's assessed limitations with Plaintiff's hands. The ALJ also plainly considered the frequency of Plaintiff's visits, noting a fairly significant gap from September 2017 to June 2018 (Tr. 183).

Finally, I note the ALJ incorporated several limitations into Plaintiff's RFC that are consistent with Dr. Michel's opinion, including limiting Plaintiff to only occasional balancing, stooping, and crouching, and finding Plaintiff can never climb ladders or ropes (Tr. 177, 1083). This is consistent with the ALJ's decision to assign "little weight," but not "no weight," to Dr. Michel's decision.

Based on a review of the record and the ALJ's explanation for the weight he assigned to Dr. Michel's opinion, I find the ALJ followed the proper legal standards in declining to assign the opinion controlling weight, and further that the ALJ's determination to assign the opinion little weight is adequately explained with sufficiently good reasons, and it is supported by substantial evidence. Plaintiff's motion should be denied as it pertains to the ALJ's consideration of Dr. Michel's opinion.

**B.       The ALJ's Consideration of Other Medical Opinions**

Plaintiff also challenges the ALJ's consideration of the opinions of (1) mental consultative examiner Kevin Blanton, Ph.D., given July 11, 2016 (Tr. 800-05), (2) mental consultative examiner Tracy Allred, Ed.D., given March 31, 2020 (Tr. 957-59), and (3) treating psychologist William Richards, Ph.D., offered February 19, 2021 (Tr. 1075-77). He argues: "ALJ Spangler's

13

conclusion that Mr. Cooper does not suffer from marked limitations partly because he does some household chores, cares for a pet, and has a driver's license is not supported by the longitudinal record or by opinion evidence by examining and/or treating physicians, and this constitutes error. All medical opinions must be evaluated and sufficient reasons for rejecting those opinions are required." [Doc. 20 at Page ID # 1281 (citing 20 C.F.R. § 404.1527(c), *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 940 (6th Cir. 2011), *Gayheart*, 710 F.3d at 377)]. He further argues the "ALJ's 'moderate limitations' are not supported by the longitudinal medical records, the opinion evidence from examining and treating physicians in the case file, the function report Mr. Cooper completed (Tr. 522-529), or the testimony given at his Mr. Cooper's hearings." [Doc. 20 at Page ID # 1281-82]. He seems to suggest the ALJ erred by giving "greater weight" to the 2016 opinions of the state agency non-examining consultants [Doc. 20 at Page ID # 1279 (citing Tr. 187-89)].

Regarding Dr. Blanton's opinion, the ALJ found:

> After his examination of the claimant in 2016, Dr. Blanton concluded that his ability to understand and remember instructions was moderately to severely impaired due to reported intellectual and academic skills deficits; his ability to sustain attention and concentration was moderately to severely impaired as a result of intellectual deficits; his ability to interact with people was moderately to severely impaired because of mood and anxiety difficulties; and his ability to adapt to changes in routine or work-like settings was moderately to severely impaired as a result of reported intellectual and academic skills deficits, and mood and anxiety difficulties. (See Exhibit B8F). Similarly, Dr. Blanton's opinion is given some weight. The claimant's daily functioning, as reflected in medical records, appears [to] be more wide ranging than he acknowledges, and it includes interaction with friends and family, care for himself and pets, watching television, driving, and performance of some chores. His involvement in those activities supports the existence of moderate limitations.

(Tr. 187-88).

Regarding Dr. Allred's opinion, the ALJ found:

>After her most recent examination of the claimant, Dr. Allred concluded that his ability to understand and remember is difficult to ascertain, given his reports of a history of being in special education classes, a history of a seizure disorder, daily recall delays, and noted delays on the mental status evaluation, as well as on the clinical interview. Consequently, she concluded that the claimant's ability to understand and remember is moderately to markedly limited. Dr. Allred assessed moderate to marked limitation to the claimant's ability to sustain concentration and persistence due to symptoms of depression and anxiety, as well as the possibility of a learning disorder and the possibility of an unspecified neurocognitive disorder. She estimated that the claimant's ability to interact socially is moderately limited due to symptoms of depression and anxiety, as well as [the] possibility of a learning disorder. Finally, she estimated moderate difficulty with adaptation and ability to tolerate stress associated with daily activities due to symptoms of depression and anxiety and possible learning disorder. (See Exhibit B21F). She estimated marked difficulty with complex instructions and decisions. (See Exhibit B20F)[.] Dr. Allred's notation of the claimant's inability to handle complex matters is well supported by the record. However, as discussed above, the claimant's functioning, which apparently includes the performance of some chores, the ability to drive (and thus, pass a driving test), and care for himself and a pet during the period at issue. He experiences limitations but they are of moderate severity. Accordingly, her opinion is given some weight.

(Tr. 187).

Regarding Dr. Richards's opinion, the ALJ found:

>Dr. William Richards provided a medical source statement in which he estimated mild limitation to the claimant's ability to understand, remember and carry out simple instructions and moderate to marked difficulty with complex ones. (See Exhibit B26F). He opined that the claimant has moderate difficulty with interaction and marked difficulty handling changes in his routine. Dr. Richards, as a treating source, has more intimate and personal knowledge of the claimant's limitations. His estimations are given great weight for the most part, but in light of the claimant's abilities to manage self-care and care for a pet, the undersigned finds only moderate difficulty with adaptation. Most of his estimates are well

15

supported by the medical evidence and by the claimant's functioning, as set forth in the "B" criteria analysis, above.

(Tr. 188).

Finally, regarding the state agency consultants' opinions, the ALJ found:

> In opinions generated in July of 2016 and October of 2016, respectively, Drs. Tommie Slayden [and] Mark Berkowitz concluded that the claimant experienced mild limitation to activities of daily living, moderate limitation to social functioning and maintaining concentration, persistence and pace, and had experienced no repeated episodes of decompensation due to anxiety, affective disorder, and intellectual deficits. (See Exhibits B1A and B3A). The current "B" criteria direct the undersigned to look at different criteria in assessing the claimant's ability to function, rendering these opinions of questionable relevance. To the extent Drs. Slayden and Berkowitz recognize that the claimant experiences moderate difficulty with social interaction, an estimation that is supported by his ability to sustain a long-term relationship with Ms. Gibson and reports of him spending time with friends and family, in the context of some problems with paranoia and irritability (described by the claimant). This portion of their opinions is given great weight. Similarly, their estimation of moderate difficulty with concentration is supported by the claimant's abilities to do some chores (from recent statements by him), watch television, drive, and care for pets. Thus, that portion of their opinions is also given greater weight. These opinions are too remote to be of a great deal of assistance in this analysis, and they use criteria that is no longer applicable. Accordingly, they are given limited weight. To the extent that they reflect estimation of moderate limitations, they are given some consideration since the evidence supports that level of limitation.

(Tr. 189).

As the Commissioner points out, Plaintiff's contention that the ALJ "gave greater weight to the 2016 opinions of non-examining sources" than to the examining sources is not entirely accurate. Dr. Allred found Plaintiff was, at most, moderately to markedly limited in each of the four areas of mental functioning (Tr. 961-64). Similarly, Dr. Blanton found Plaintiff was "moderately to severely impaired" in each of the four areas of mental functioning (Tr. 799-805).

16

The ALJ found, at step two, that Plaintiff has moderate limitations in all four areas of mental functioning, and the ALJ's RFC assessment includes limitations entirely consistent with moderate mental limitations. Indeed, Plaintiff does not argue that the RFC does not account for moderate limitations in these areas. This is consistent with the ALJ's decision to assign Dr. Allred's and Dr. Blanton's opinions "some weight," and it is consistent with the notion that a claimant's RFC is the most they can do, not the least, despite their limitations. *See* 20 C.F.R. § 416.945(a). In other words, the ALJ credited the high end of functioning assessed by Dr. Allred and Dr. Blanton.

Dr. Richards found Plaintiff was markedly limited in his ability to "carry out complex instructions," "make judgments on complex work-related decisions," and "respond appropriately to usual work situations and to changes in a routine work setting." (Tr. 1075-76). As mentioned, the ALJ limited Plaintiff to simple work-related tasks that are "low level detailed." (Tr. 177). In addition, the ALJ limited Plaintiff to only "*occasional* changes in the work setting that *should be introduced gradually*." (Tr. 177 (emphasis added)). By contrast, the state agency consultants found Plaintiff was "not significantly limited" in his ability to carry out even detailed instructions, and that Plaintiff had no adaptation limitations (Tr. 89-90, 111-12). Again, this is consistent with the ALJ's decision to assign "great weight" to Dr. Richards's opinion while assigning limited weight to aspects of the state agency consultants' opinions. It is evident the ALJ did not accept the state agency consultants' assessment of Plaintiff's ability to adapt to change. The ALJ's RFC is much closer to the assessments of Dr. Richards, Dr. Blanton, and Dr. Allred. Plaintiff's case is thus easily distinguishable from *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013), which Plaintiff cites in his brief. In that case, the ALJ assigned "little weight" to the opinion of the claimant's long-term treating psychiatrist, who found the claimant was markedly limited in his ability to perform activities of daily living, his ability to function socially, and in

concentration, persistence and pace. *Id.* at 369-70, 376. The treating psychiatrist found he had "poor abilities to handle simple and routine tasks in a work setting, . . . and to adapt to change." *Id.* at 369. The state agency medical expert, whose opinion the ALJ did credit, found that "alcohol was closely intertwined" with the claimant's mental issues, "and therefore any incapacity from performing work would be attributable to his 'excessive drinking.'" *Gayheart v. Comm'r of Soc. Sec.*, No. 3:10-cv-401, 2011 WL 10604891, at *18 (S.D. Ohio Oct. 6, 2011) (report and recommendation rejected by district court; however, Sixth Circuit reversed district court and ordered case be remanded to SSA for administrative proceedings).

Moreover, as the Commissioner points out, the ALJ did not equate Plaintiff's ability to care for himself and his pets, and perform chores with the ability to maintain full time employment. Rather, the ALJ weighed all the medical opinion evidence, and other evidence in the record, and found it supported only moderate limitations in mental functioning. Related to "adapting or managing oneself," in addition to the medical opinion evidence, the ALJ discussed records from November 2020 when Plaintiff reported he had "been doing really well," for "a year and a half," during which time had "been receiving regular outpatient therapy and med management services." (Tr. 186, 968). He also reported living with Gibson, who is identified as his girlfriend, as well as "their grandson and another family member," and he stated he "receives support" from his "large family." (Tr. 968). Gibson informed the provider at that time that Plaintiff "is typically very compliant with medications" and "has strong and healthy relationships." (Tr. 968-69). The ALJ also cited Plaintiff's reports that he "can do cooking, grocery shopping, laundry, driving, and housecleaning." (Tr. 963, 185). Elsewhere in the decision, the ALJ noted Plaintiff had "normal speech, normal thought processes, and normal thought content," even though his "judgment and insight were poor." (Tr. 184). These are all relevant to an assessment of a claimant's ability to

18

adapt or manage themselves. *See Brown v. Comm'r of Soc. Sec.*, No. 21-12025, 2022 WL 3695485, at *4 (E.D. Mich. July 27, 2022) ("Adapting or managing oneself refers to the ability to 'regulate emotions, control behavior, and maintain well-being in a work setting,' including 'making plans for yourself independently of others; [and] maintaining personal hygiene and attire appropriate to a work setting.'" (quoting 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(E)(4))), report and recommendation adopted, 2022 WL 3686425 (E.D. Mich. Aug. 24, 2022).

It is the ALJ's job to weigh the medical opinion evidence. *See Eslinger*, 476 F. App'x at 621. The ALJ explicitly acknowledged the state agency consultants' opinions were remote in time, and the ALJ discussed and considered Plaintiff's more recent mental health records, including the more recent opinion evidence (Tr. 187-89). *See Jenkins v. Berryhill*, No. 3:16-cv-699-HBG, 2019 WL 2180437, at *11 (E.D. Tenn. May 16, 2019) (noting that "when the non-examining source's opinion is based on review of an incomplete record, there must be an indication that the ALJ considered that fact before giving greater weight to the non-examining source's opinion" (citing *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007))). Finally, as the Commissioner points out, the State Agency psychologists are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rule 96-6p, 1996 WL 374180, at *2 (SSA July 2, 1996)).

In sum, I find Plaintiff has failed to show the ALJ committed reversible error in his consideration of the medical opinion evidence provided by Dr. Blanton, Dr. Allred, and Dr. Richards. Plaintiff's motion should be denied in this regard.

19

C.        The ALJ's Consideration of Plaintiff's Testimony

Plaintiff argues the ALJ "disregarded" his testimony [Doc. 20 at Page ID # 1278]. The

entirety of Plaintiff's argument on this issue is as follows:

> At three separate hearings over a period of four years, Mr.
> Cooper has consistently testified about his physical and mental
> health symptoms and subsequent limitations. See "Hearing
> Testimony" above. He has repeatedly described the physical pain
> that he has and how his physical pain has exacerbated his mental
> health problems. His testimony has been consistent with his medical
> records and between the hearings, the only difference being how his
> physical pain and mental health limitations have increased during
> this time. At two separate hearings, Mr. Cooper has testified that he
> prays to not wake up when he falls asleep, and has confirmed that
> he was attempting suicide in 2019. This last statement is also
> reiterated in his emergency room records from the time in question.
> (Tr. 932). However, the ALJ opinion found "[Mr.] Cooper
> acknowledged that when he attempted to suicide [sic], he said that
> he did not really mean to kill himself." (Tr. 175)[6] The ALJ does
> not give any reason for disregarding the Claimant's testimony,
> longitudinal medical records, including the emergency room records
> concerning his 2019 suicide attempt.

[Doc. 20 at Page ID # 1278 (alterations in brief)].

The ALJ recounted Plaintiff's hearing testimony at length (Tr. 178-180). The ALJ then

found while Plaintiff's medically determinable impairments could reasonably be expected to cause

some of the alleged symptoms, "the claimant's statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record for the reasons explained in this decision." (Tr. 181).

Plaintiff may be attempting to argue the ALJ failed to properly consider his subjective

statements concerning his pain and mental health symptoms. Social Security Ruling ("SSR") 16-

3p provides guidance as to how the Social Security Administration evaluates the statements

---

[6] This quote appears on Tr. 180; as far as I can tell, it does not appear on Tr. 175.

20

regarding the intensity, persistence, and limiting effects of symptoms in disability claims. An examination of the ALJ's decision shows that he set forth and discussed the relevant evidence in a thorough and detailed manner. That is, the ALJ properly considered several factors throughout his decision including medical opinion evidence as addressed above. The ALJ also considered obvious discrepancies such as Plaintiff's claim (in a telehealth appointment) that he was experiencing weight loss and was down to 132 pounds, when ER records from the same month showed Plaintiff weight 148 pounds (Tr. 187); as well as instances when examining physicians described Plaintiff as uncooperative and obstructionist (*see e.g.*, Tr. 182 (Dr. Uzzle "noted once more that the claimant's effort and cooperation during the evaluation were suboptimal")). The ALJ discussed Plaintiff's treatment, medications, and their effectiveness (*e.g.*, Tr. 183 (Plaintiff "reported that hydrocodone was only partially effective at addressing his back pain") Tr. 184 ("He stated that Risperdal and Zoloft had helped in a limited way"); as well as other measures Plaintiff has taken to address his symptoms, such as therapy (Tr. 185). The ALJ also addressed Plaintiff's activities of daily living, noting that while Plaintiff "asserted in his function report and during his testimony that he could not cook or do many chores," he "later acknowledged that he could do various chores including shopping, cooking, driving, laundry and housecleaning," although the ALJ acknowledged Plaintiff "was limited by his medical problems." (Tr. 176).

Furthermore, contrary to Plaintiff's assertion, the ALJ did not "ignore" Plaintiff's testimony regarding his 2019 alleged suicide attempt. The ALJ explicitly described Plaintiff's testimony on this topic (Tr. 179). And toward the end of the RFC assessment, the ALJ found: "The undersigned notes that the claimant's attempt to harm himself both occurred under the influence of alcohol and that his compliance with mental health treatment has varied over the period at issue. When he is abstinent from substance abuse and compliant with treatment, he is

21

relatively stable. Generally, his depression and anxiety, combined with intellectual deficits, cause moderate limitations to his ability to function effectively." (Tr. 187).

In making this comment, the ALJ was recounting Plaintiff's own statements to his providers: "Records from Peninsula reflect that the claimant could not really explain his suicidal gesture but stated that he did not really want to kill himself and elaborated that he was really 'high' during the incident. (See Exhibit B17F)." The ALJ also noted that records from September 2019 indicate that there "was a question on the part of the provider, a nurse practitioner, Mr. James Bowen, about whether the claimant's suicidal gesture was an attempt or just a bid for attention. . . . The claimant admitted recent use of Roxicodone and morphine, as well as alcohol use during the incident." (Tr. 183). The ALJ discussed the relevant evidence pertaining to the 2019 alleged suicide attempt. While the ALJ did not specifically address the precise testimony Plaintiff refers to above, it is clear the ALJ considered this testimony as well as the observations from other providers and comments from Plaintiff himself regarding the incident. The ALJ's failure to specifically mention the testimony Plaintiff points to in his brief does not render the ALJ's decision unreviewable or not supported by substantial evidence.

As such, I find the ALJ properly evaluated Plaintiff's subjective complaints and alleged symptoms in a manner consisted with relevant SSA policies and regulations, including SSR 16-3p and 20 C.F.R. § 416.929. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted), and Plaintiff has failed to show any error in the ALJ's decision in this regard. The evaluation of Plaintiff's alleged symptoms rests with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual

22

conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 713–14 (6th Cir. 2012).

### D.     The ALJ's Consideration of Lay Witness Testimony

Plaintiff argues the ALJ "arbitrarily ignored or rejected" Gibson's testimony during the October 2019 hearing [Doc. 20 at Page ID # 1278]. The entirety of his argument related to the ALJ's consideration of Gibson's testimony is as follows:

> In his opinion, ALJ Spangler stated that Mr. Cooper's girlfriend, Ms. Gibson, reported that he had strong relationships with friends and family. (Tr. 177) Ms. Gibson actually testified at the October 2019 remand hearing that Mr. Cooper "is in a depression real bad,["] he's in a lot of pain, he gets irritable and has mood swings, and that he isolates from people, even friends or family. She also testified that she found him when he attempted suicide in 2019, and that he told her "he was trying to kill hisself, he did want to die, that he did not want to live." (Tr. 42-46)

> The ALJ gave no reason for why he ignored this testimony. Lay witness testimony can often be a crucial part of the record in a disability hearing. The Sixth Circuit has recognized the importance. "Perceptible weight must be given to lay testimony where, as here, it is fully supported by the reports of the treating physicians." *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). In this case, the longitudinal medical evidence and opinion evidence supports that Mr. Cooper has a marked limitation in at least two areas of his mental functioning and has severe limitations in his ability to engage in physical activity. The testimony by Ms. Gibson corroborates the medical evidence with specific observations on a regular basis.

[Doc. 20 at Page ID # 1278-79].

Regarding Gibson's testimony, the ALJ noted:

> The claimant's girlfriend, Ms. Gibson, also testified at this hearing. She stated that she had been with him for nine years and that he was formerly very active and social but had declined. She reported that he also used to go fishing a lot but could no longer do that. Ms. Gibson cited depression, pain, irritability, mood swings and crying. She also indicated that the claimant's legs drew up at

23

night and he could not straighten them. She testified that she administered his medications. She reported that she did not realize that he was suicidal. Ms. Gibson said that during his seizures, he also drew up and then remained incoherent for fifteen to twenty minutes. She confirmed that the [claimant] could not be around others, even small groups, and stated that he was paranoid and thought people were against him. Finally, she stated that the frequency of his seizures varied based on his stress level.

(Tr. 179-80). In addition, at step two, the ALJ specifically noted: "Ms. Gibson reported that he had strong relationships with friends and family. He visited with family away from his home in early 2021. (See Exhibit B28F). Nevertheless, reported discomfort around others, irritability, and paranoia suggest moderate difficulty in this area." (Tr. 177). Accordingly, the ALJ certainly did not *ignore* Gibson's testimony, though it is true the ALJ did not specifically address the testimony regarding Plaintiff's alleged suicidal intent nor did the ALJ assign the testimony a specific weight. The pertinent issue is whether these failures amount to reversible error.

Although the parties do not cite any applicable regulations, I note Gibson is considered an "other source." 20 C.F.R. § 416.913(d) (version in effect Sept. 3, 2013, through March 26, 2017). An ALJ "may" use evidence from "other sources" to show the severity of a claimant's impairments and how they affect the claimant's ability to work. *Id.* The Sixth Circuit has held that, "[i]f lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (citation omitted). The failure to do so, however, can constitute harmless error. *See id.* at 810-11 (citations omitted) (Where "no reasonable ALJ, when fully crediting the testimony could have reached a different disability determination," the failure to discuss it was harmless error.).

24

Courts in this district and elsewhere have found harmless error when a third-party Function Report "is repetitive of the plaintiff's assertions." *Weaver v. Comm'r of Soc. Sec.*, No. 3:13-cv-713, 2015 WL 64873, at *10 (E.D. Tenn. Jan. 5, 2015) (citing *Paskewitz v. Astrue*, No. 1:11CV2371, 2012 WL 5845357, at *14) (N.D. Ohio Oct. 29, 2012)); *see also Ellis v. Astrue*, No. 3:11-CV-535, 2012 WL 5304203, at *4 (Oct. 4, 2012) (finding no harmful error where an ALJ failed to discuss third party report from claimant's daughter, because, among other reasons, the statements in the report were "basically cumulative"). I see no reason why a third-party Function Report should be treated differently than testimony in this case. *See Decheney v. Comm'r of Soc. Sec.*, No. 1:13-cv-1302, 2015 WL 4526836, at *9 n.5 (W.D. Mich. July 27, 2015) (rejecting Commissioner's argument that testimony should be treated differently than third-party function report); *see also Wesley v. Kijakazi*, No. 2:20-cv-02073-MHH, 2022 WL 3588323, at *17 (N.D. Al. Aug. 22, 2022) (finding that ALJ's failure to "articulate how he considered the third-party function report is not reversible error," because the ALJ was not required to "explain in detail how he weighed the evidence"). Plaintiff does not identify anything significant in Gibson's testimony that is not repetitive of Plaintiff's own testimony. Indeed, Plaintiff appears to assert an identical argument to the one addressed above regarding Plaintiff's testimony about his alleged suicidal intent.

Plaintiff cites to *Lashley*, but in that case the Sixth Circuit found the ALJ erred by finding the claimant did not have a single severe impairment, despite reports from four physicians, including two treating physicians, indicating the claimant had limitations that rendered him disabled. 708 F.2d at 1053-54. The court concluded the record of the claimant's impairments was so obvious that it directly awarded benefits. *Id.* at 1053 (observing the government "only half-heartedly" defended the ALJ's conclusion that the claimant had no severe impairments, and

25

finding the treating and examining doctors' medical opinions "constitute conclusive evidence that [the claimant's] ability to perform work related functions was severely limited."). At the conclusion of its analysis regarding the ALJ's error in considering these medical opinions, the court briefly addressed how the claimant's wife's testimony was "fully supported" by the opinions of the treating physicians—the same treating physicians whose opinions, the court held, were entitled to controlling weight and were conclusive in establishing the claimant's entitlement to benefits. *Id.* at 1054. The analysis set forth above regarding the medical opinion evidence in this case makes *Lashley* readily distinguishable.

Accordingly, I find no harmful error with the ALJ's failure to specifically address the testimony Plaintiff refers to or to assign a specific weight to Gibson's testimony. The decision makes clear the ALJ was fully aware of Gibson's testimony and considered it when analyzing Plaintiff's claim. The decision also makes clear that the ALJ did not completely reject the testimony out of hand but found Gibson's accounting of Plaintiff's conditions and limitations was not entirely consistent with the medical evidence and other evidence in the record. Plaintiff's motion should be denied as it pertains to Gibson's testimony.

### E.     Appeals Council Remand Order

Plaintiff next argues the ALJ did not properly abide by the Appeals Council Order issued March 5, 2020 [Doc. 20 at Page ID # 1282; Tr. 165-68]. The March 2020 Appeals Council order pertained to ALJ Beeby's October 2019 decision, not ALJ Spangler's January 2022 decision that is the subject of this appeal.

As the Commissioner points out, "the overwhelming majority of courts in this circuit . . . have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand." *Hunter v. Saul*, No. 1:19-

26

CV-00120-LLK, 2020 WL 2544531, at *2 (W.D. Ky. May 19, 2020) (citing *Hubbard v. Comm'r of Soc. Sec.*, No. CV 18-11758, 2019 WL 4866733, at *3 (E.D. Mich. June 10, 2019) (collecting cases)). Further, "in declining to assume jurisdiction" over the ALJ's January 2022 decision, "the Appeals Council implicitly found" that the ALJ's decision addressed the concerns it raised in its March 2020 order. *Hunter*, 2020 WL 2544531, at *2. Plaintiff had the opportunity to address these arguments by the Commissioner by filing a reply, but no reply was filed. Accordingly, I find Plaintiff has waived any argument regarding the Court's jurisdiction to consider whether the ALJ satisfied the Appeals Council's order. I recommend the Court follow the "overwhelming majority" of other courts in the Sixth Circuit in this regard and deny Plaintiff's motion to the extent it seeks reversal or remand on these grounds.

More importantly, the ALJ's decision in this case demonstrates that the ALJ adequately considered the medical opinion evidence, Gibson's testimony, and Plaintiff's testimony in the context of the record as a whole, and ultimately reached a reasoned conclusion regarding Plaintiff's RFC. The ALJ's decision is capable of meaningful review, and I find it is supported by substantial evidence. That is, the decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted).

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In assessing Plaintiff's RFC,

the ALJ explained the evidence that supported his conclusions and why he considered certain evidence less persuasive, and I find the ALJ's conclusions are adequately supported. Contrary to Plaintiff's brief argument, the ALJ did not "succumb to the temptation to play doctor and make [his] own independent medical findings," [Doc. 20 at Page ID # 1282], about Plaintiff's mental or physical RFC. The ALJ cited, discussed, and at least partially relied on several medical source opinions, in addition to other medical evidence in the record, Plaintiff's own statements and those of Gibson, and other relevant evidence, including Plaintiff's activities of daily living.[7] Plaintiff cites to evidence in the record to support his position, but that is insufficient given the standard of review. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted).

---

[7] I note there is no bright line requiring that the ALJ's RFC assessment must be perfectly consistent with at least one medical opinion. As the Sixth Circuit has explained: "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding. *See Ford v. Comm'r of Soc. Sec.*, 114 [F. App'x] 194, 197 (6th Cir. 2004)." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

28

## V. CONCLUSION

For the foregoing reasons, I **RECOMMEND**[8] that:

      (1) Plaintiff's motion for summary judgment [Doc. 19] be **DENIED**;

      (2) the Commissioner's motion for summary judgment [Doc. 24] be **GRANTED**; and

      (3) the Commissioner's decision denying benefits be **AFFIRMED**.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).